Mr. Roth May it please the court. My clients are a husband and wife who seek to lawfully reside together here in the United States. This case arises to you on dismissal for lack of subject matter jurisdiction under the so-called consular doctrine of consular non-reviewability. What would be the difference for us if we were to find that this was not an accurate use of the term subject matter jurisdiction, but that indeed one could look at it as a 12B6 dismissal just as easily? Yes, Your Honor, we think that's right. The government below argued it in terms of Is there a difference? Is there aside from the fact that the dismissal is with prejudice at that point? We think that what Judge Lee did makes a lot more sense if you think of this as a lack of jurisdiction. If there was no jurisdiction, then dismissing the case made sense without needing to go into whether I need to let them replead the complaint, whether I need to give an explanation for why I'm not granting them leave to seek to amend the complaint. If it's jurisdictional, the case is over. You can take it on appeal if you want. If it's a failure to state a claim, in the interim between the filing of the initial complaint and the dismissal of the case, there have been factual developments as well as legal developments. The legal development, of course, was the decision in the Supreme Court in Kerry v. Dinh. At the time we initially filed this case, the government had said that our client was inadmissible for having been convicted in Northern District of Indiana. Controlled substance abuse. Right, and that was wrong. Which was plainly wrong. And so part of the way we framed the complaint in terms of declaratory relief was they say we were convicted in federal district court. Here's the PACER docket. We weren't. There's no conviction. But what about the case as we now have it? I guess the reason that this is boiled down to is this very elastic language under 1182A2C, barring any alien who the consular officer or the attorney general knows or has reason to believe is or has been an illicit drug trafficker. That doesn't sound like requiring a conviction to me. It sounds much mushier than that. And this consular officer might have taken the view that even though charges were dropped, that could simply mean the U.S. attorney thought that finding guilt beyond a reasonable doubt was going to be difficult. But it might not reflect a view, as we even see in sentencing. It might not reflect a view that they didn't think it happened. Yes, and first of all, I agree with your description of the statute. It doesn't require a conviction, but it does require something. And the something has to be a little bit more than uncorroborated charges. And I don't take my word for it. The Board of Immigration Appeals and Published Decisions, the agency's own rules and procedures, call for it to say that the reason to believe standard has to be met by something that is competent and probative of the question. No, I mean, here's one area in which I really do agree with you, although I'm not sure it's going to get anybody anywhere. There are some pretty well-articulated standards from the board and from the process that would take place if somebody had received a notice to appear who was already in the United States and was being in removal proceedings about that. And it appears that for the aliens who are outside the United States, such as Mr. Ulloa, that there's very little, if any, process. We'll see what the consular non-reviewability doctrine really means, which creates an incentive to come in illegally because if you can make it in, you get into the due process framework, and as long as you're outside, you don't. And I'm not sure that that's an incentive that anybody really meant to create, but I see it there in the system. It is odd, and I would further note that this couple met here in the U.S. They were trying to do things the right way. They filed the legal paperwork. A number of different steps were taken, and they went to the consulate ready. In Mexico. In Mexico. Right. He did what he was supposed to do. He left the country, went to Mexico. You would think trying to do it the right way. And under the government's, under this court's case, let me just step back for a moment and describe the procedure. The first step, there's a family visa petition file. We know the procedure, the I-130 and so on, yeah. That, if it was denied, could be appealed to the Board of Immigration Appeals. A reason would be given. If that was denied, your case law allows us to go into district court under the APA. The next step would be seeking a waiver. If Ms. Morphine had been found not to suffer extreme hardship, reasons would have been given. A written decision would have been produced. We could have appealed that to the administrative appeal unit. After the consulate, if the consulate issued a visa, that doesn't give you an automatic right to enter. You come to the port of entry and seek admission as a resident. If, at that point, the port of entry inspector said, no, I think you're inadmissible, go away. At that point, we could have sought habeas corpus relief. We could have probably been put into removal proceedings. Every step along the way, there's some sort of review. There's some sort of oversight, except for this intermediate step where you go to the consulate. And according to the government's theory, one person at the consulate has the power of life or death over you and can split up this family forever. And that's what apparently has happened under the government's theory. And that makes even less sense when you consider that the same type of charges for the same, an individual from the same country married to a U.S. citizen, if that happened here, the courts would be very well capable. It's well within the judicial ken to address whether there was sufficient evidence, whether the agency followed the right procedures. So you've done, I think, a careful job of trying to focus on mismorphin, the U.S. citizen's interests here as one of the marital partners, not Mr. Ulloa. And I think you have to do that because it's very hard to find a theory that says every inhabitant of the planet, you know, who's not in the United States has a due process right, you know, to try to come to the United States. That's not what the law has ever been. And I don't think we could be the first court to say so. But with mismorphin, you know, you still have, I don't know, I mean, it's a hard case to make. Your Honor, I completely agree with what you, under our case law, a noncitizen seeking entry doesn't have any constitutional rights. That's the same for somebody who was arrested at a port of entry at O'Hare Airport. They don't have any constitutional right of entry. That doesn't mean, therefore, that they have no right to seek review over the legality of the decision to exclude them. They're two separate considerations. Now, the person isn't going to be able to argue I have a constitutional right, but they can say you're violating the law, you're violating the regulations in keeping me out of the country. But what violation of the regulation here, reason to believe? If you just think that the indictment that's later dismissed is too flimsy a ground to provide the basis for reason to believe, but the indictment does represent a grand jury's finding that there's probable cause. It's not nothing. It is not nothing. And we're not saying, and I don't think your case law or the Board's case law says that they can't give it any consideration whatsoever. The question is whether it, standing alone, could suffice to meet this reason to believe standard. The Board's precedent does, it gets Chevron deference because it makes law, as it were, and authoritatively interprets the law. And so the Foreign Affairs Manual is a little bit less clear. It is binding on it. But is that individually enforceable by somebody like Ms. Morphin? Usually the answer is no for those kinds of manuals. And I don't think this Court has ever actually addressed that question. What we would say is that at a minimum that the procedures that are set forth under the Foreign Affairs Manual, which are not discretionary as to those Foreign Affairs officers, that if the government fails to follow its own procedures, that is indicative, at least. It may be enough for us to allege that there wasn't a faithful execution of their duties, which is if. But that's an indirect way of saying it's individually enforceable, really, aren't you? I don't see the difference. I don't. It seems to us that it's not exactly the same. So suppose we get to DIN. I mean, if something rests on a facially legitimate bona fide reason, some would say, then it's good enough. And there is a part of the statute that looks at drug trafficking. And, you know, it sure doesn't seem like a very demanding standard. Right. Other courts that have looked at the facially legitimate and bona fide standard have asked whether the government is properly construing and applying the law in looking at that standard. And the government places a lot of reliance on Justice Kennedy's opinion in DIN, which doesn't talk about that. The reason it doesn't talk about that is because Ms. DIN didn't raise those claims. Ms. DIN didn't argue that there had been a misinterpretation of the statute. She didn't argue there had been procedural violations. She didn't argue any of that. She wanted to get more information because she wanted to build her case. And the Supreme Court said no. So I don't think you should read DIN as somehow modifying the Mandel standard, which various other courts have construed to permit these kinds of legal claims. Even Judge Bork in dissent in Aberesk says, you know, of course, you know, construing the statute doesn't the statute has to be properly construed. And so to the extent that we can make out a case for legal error at the consulate below, we believe that that fits even within the not very demanding DIN standard. In that sense, in some ways it sort of tracks the 1252A2D rules that apply to petitions for review. And those, of course, came from the sort of minimum requirements that were applicable in INS v. St. Cyr. And so there's a long line of Supreme Court case law as to even individuals who are in exclusion proceedings and don't have constitutional rights vis-a-vis their entry. Of course, we don't believe, and we've argued in our briefs, that we don't believe that Kerry v. DIN and the facially legitimate bona fide standard is really the proper standard. Well, even if you can't go through the Marx analysis and come up with a governing opinion in DIN, the worst you're left with is no DIN opinion, something almost like affirmed by an equally divided court or some such thing. But you still would have to work your way through all of these doctrines that have built up that give Congress and the executive branch tremendous power at the border. Well, they certainly do. And, you know, that seems appropriate as to individuals without sort of strong ties to the United States. But that sort of, for instance, the government's best case against APA jurisdiction, it's Evedra Bruno, that individual was seeking a nonimmigrant visa. The petitioner in that case wasn't a United States citizen. There weren't a couple of U.S. citizen children. There was certainly not a finding that a U.S. citizen's spouse would suffer extreme hardship. And some of the logic in that opinion, whatever it's worth in that context, doesn't apply here. Judge Randolph in that case said the petitioner's interest ends with the approval of the petition. That's just the start of it. After the petition happens, you need to execute a binding affidavit of support. After that happens, you appear at a consular interview abroad, the U.S. citizen's spouse, under oath to testify. After that, at any point, the citizen's spouse can file a written withdrawal of the petition, and it's considered just the whole process ends. That petitioning spouse is, from beginning to end, the moving party in the case. We don't think whatever it has to do with an employer, it certainly isn't true as to our client, Ms. Morphine. And so we don't see her as a pure third-party interest. She has a direct interest in this case. And she's the one, and her children, who are suffering extreme hardship. I would also wish to sort of step back and say that government doesn't really address Fleming v. Nestor or Rusk v. Court. There are other Supreme Court precedent which actually applies the APA, both to non-citizens outside the United States and to putative non-citizens outside the United States. Rusk v. Court, the government said that individual was a non-citizen. He said he wasn't. The Supreme Court allowed APA review, even though he was abroad. Fleming v. Nestor was a communist who had been deported to Bulgaria, seeking damages, seeking to get back his Social Security income. In the end, we don't think that the government's right to say that our claim is necessarily futile, and we don't know that any error is harmless. If the court finds that the adoption of constituent non-reviewability isn't jurisdictional in nature, we hope that we will at least be given the opportunity to re-plead. And we've tried to set out some of the allegations, which we would like to make, if we are so lucky as to be back in front of Judge Lee. All right. You can save a little bit of time, if you like. Ms. Young. May it please the Court, Stacey Young for the government. Under the well-entrenched doctrine of consular non-reviewability, neither appellant in this case is entitled to review of the consular denial. So are you regarding this as a jurisdictional or as a case-processing, sort of non-jurisdictional federal common law doctrine?  Why does it deprive the federal courts of the authority to decide the scope of the immigration laws? Well, Your Honor, courts, including the Supreme Court, for many decades have found that there is no judicial review in cases involving consular denials. Of course. And so under 1252, for example, as federal courts, we have to decide whether we're operating within the zone in which no judicial review is possible, in which case we reject judicial review. And we have to decide if we're operating within the zone when judicial review is possible, under the capital D question of law area. And we have the authority to sort that way. We have the authority to look at a law and say, is there any kind of claim you have under this law? So why isn't that what you're really arguing? You're just saying that when a consular official acting overseas takes an action, the U.S. citizen's spouse of that person cannot state any kind of claim under either the immigration statutes or the Constitution for relief. That sounds non-jurisdictional to me. Your Honor, I believe that that is what we're saying. So that's not jurisdiction. It just means we have to see what's in front of us, and then you either do have some kind of claim for relief or you don't, and you don't wait until the end and say, well, you don't, therefore we never had the authority to say this to begin with. Let me give you a concrete example or a concrete question. A plaintiff files a lawsuit saying that the FDA should regulate drugs used to carry out executions, and the FDA says no. The decision whether to regulate it is committed to agency discretion by law for purposes of the Administrative Procedure Act. Is that a request to dismiss substantively or to dismiss for lack of jurisdiction? I suppose it would be a dismissal on a substantive ground. It's plainly on substantive grounds. The judge will construe the APA, will construe what the FDA's operating statute is, and apply that. The question that my colleague has asked and which I'm also asking is, why isn't this the same kind of thing? The State Department believes that the decision whether to issue a visa effectively is committed to agency discretion by law, and so why don't we have a merits dismissal rather than a jurisdictional dismissal? I would not argue with that. I think a dismissal on the merits would be fine, and based on what the district court judge did, I think that his decision seemed to be both jurisdictional and on the merits. But the problem is if he thought it was jurisdictional, which I think perhaps the district judge in the next case even more clearly seems to have thought, that means you just have to shut it down. You've made a decision. It's a question of law. Whereas if it's a question dealing with stating a claim, sometimes it's possible to amend a complaint to address whatever flaws there are. Maybe it isn't. Maybe if it's so clearly committed to agency discretion by law, it's one of those situations where amendment would be futile, and you don't need to give somebody an opportunity to file a futile amendment either. But there are some differences in the way the district courts are going to treat something that they think is a 12b-1 problem versus a 12b-6 problem. I can't say for certain in either case whether the dismissals were based solely on 12b-6 or 12b-1. It seems like in both cases they could have been based on either provision. But I think on either that the dismissals stand. They were clearly premised on the doctrine of consular non-reviewability and premised on the recent Supreme Court law from Kerry v. Dinn. And under both cases, Hazama and Morphine, it is clear that under Kerry v. Dinn there was a facially legitimate and bona fide reason given. So facially legitimate in the government's view means you can just put down some provision from the U.S. Code, and since it's unreviewable anyway, it doesn't make any difference. So the hypothetical I would like to give you is suppose this consular official in Mr. Ulloa's case, or Morphine if you will, had said, I'm denying this visa application because he's been convicted of a controlled substance offense. And suppose further, as is true in this case, that that's just wrong. He was indicted but the indictment was dismissed and there was never any conviction. So it's irrefutable from the record that that was wrong. In your view, is that something that falls within the consular non-reviewability doctrine? A flat-out mistake. I think that if there's evidence of bad faith that the decision was rendered. He was just careless. He wanted to go out and have a margarita or something. So he looks at it and says, oh, they're going to indict me. He's convicted and so he states that. So I want to know if the government is really willing to put its money where its mouth is. Are you willing to say that there is no judicial review either on behalf of Morphine, the U.S. citizen's spouse, or in any other way, we'll focus on her for obvious reasons, if it's just a flat-out mistake? Your Honor, we're not sure in Morphine or Hazama what exactly. I'm asking a hypothetical. My hypothetical is that the ground is conviction of a controlled substance offense and that's wrong. It never happened. The person has a completely clear record, never been convicted of any crime in his life. My question is, is the government sticking with non-reviewability of that decision? Yes, Your Honor. To look at the facts involved would be to look behind, which is an impermissible violation of the facially legitimate and bona fide standard that the Supreme Court has set. Isn't that a very unsatisfactory result? So now suppose the consular official decides to cite the conviction of a controlled substance offense, but the real reason in the consular official's mind is he's decided to implement the no Muslims rule and has figured out that just hypothetically the person in front of him, I'm not talking about Mr. Bulo or Ms. Morphine now, that the person is Muslim, and as long as you put anything down that the statute covers, your decisions are unreviewable anyway, so you can keep as many Muslims out as you want. If there's evidence on the face of the decision that it was issued in bad faith, then it would not pass muster under the facially legitimate and bona fide test. But as the Ninth Circuit has said, it's not enough to allege that the consular officer's information was incorrect. To look at the facts of the decision would be to look behind the decision, which is what the Supreme Court has explicitly stated is not permitted under the statute. So no matter how glaring the error, we run a system that's so arbitrary that we don't permit any kind of second look. Well, the Supreme Court in Dinn did say that a citation to a valid statute of admissibility is enough, and that's actually more than... Well, the Supreme Court didn't say that. Justice Kennedy said that. Justice Kennedy said that. I think seven justices disagreed with that. There were three justices who took the position you've just articulated that there's no review, four who would allow review, and two, Justice Kennedy, who said what you've now just said, which is different from the no review position. Well, there were two justices... Why wouldn't one say that if the consular officer said something that was demonstrably untrue, Justice Kennedy would allow review? At least that's what his opinion sounds like. Yeah, that's what I thought, actually. And then... Justice Kennedy, it was important that the government action had relied on a bona fide factual basis for denying a visa to Barasik. That's what he said. And I thought that my colleague was trying to pose a case where the consular officer had relied on a transparently untrue factual basis. Your Honor, Justice Kennedy did not, in fact, say that a factual basis was... I'm quoting his language. Believe me, he is. I can see it over there on the... It's right on my screen. I'm quoting it. Justice Kennedy did mention that there was an indication of a factual basis in the complaint. Judge Easterbrook just read you the sentence. I quoted his language. He's got the opinion up on the laptop. You may think he shouldn't have said it, but he did say it. Your Honor, I don't believe that he said that a factual basis is necessary. What he said was that there was a factual... He actually did. Listen to what he said. No, I'm not going to read the whole thing. First, he's got a paragraph about the legal basis. Then he's got a paragraph about the factual basis. A lot of people disagree with how Justice Kennedy viewed this. Seven justices of the Supreme Court disagreed with how Justice Kennedy viewed this. Perfectly reasonable. But, unfortunately, they then went off on different paths themselves, which is why we're dealing with this case as we are. Your Honor, in two different parts of Justice Kennedy's concurring opinion, he did say that a citation to a statutory basis of inadmissibility is enough. But that's not the only thing he said, which is Judge Easterbrook's point. If we care at all what Judge Kennedy said and if we agree, which I think is subject to debate, whether it happens to fit the criteria of Marx as the governing approach, I'm increasingly inclined, as this argument goes on, to think that Dinn is useless and that we really just need to figure this out from more basic principles given to us by the Supreme Court and other sources. Your Honor, the fact is there were five votes in Dinn that did hold that the decision given in that case was permissible. But that's all it was. It was just a bottom line. The reasons that inspired that bottom line were quite different between Justice Scalia and Justice Kennedy. Justice Scalia saw no legal interest whatsoever either in the alien or the spouse. But at the end of Justice Kennedy's decision, he did say that any reason given, including the reason given in this case, was enough. And the only reason given in Dinn was a citation to a valid statutory ground, which was, in fact, far broader than the statutory ground. No, but there were facts underlined. She didn't contest critical facts in Dinn. So we do have a somewhat different situation here, where Mr. Ulloa, and through Ms. Morphin, has been saying, you know, there is no reason to believe that I was involved in illicit drug trafficking. You've come to a completely impermissible decision, and the government's position is we're not even going to probe that, even in the slightest amount. We're not, as happened under the Kennedy approach in Dinn, going to see if there's some shred of factual support for that. Well, the appellants here don't dispute the fact that Mr. Ulloa was, in fact, indicted. But there's nothing in the record that shows anything beyond just the indictment itself, right? That's correct, Your Honor. And the indictment was dismissed. I mean, that's the fundamental problem here. And he says it's a mere association. It was just a legally erroneous indictment. Mere association is not enough to support criminal liability. But to go into the facts of this case is to look behind the decision. And not only did the Supreme Court say that looking behind the decision is not allowed in Dinn, it said it in Mandel, which is the case on which Dinn was based. But it did look behind the decision in Dinn, if Kennedy is the one you want to look at. And, of course, the dissenters would have done much more. They would have, Your Honor. So why doesn't Kennedy logically belong with the dissenters? We all will do something, but Kennedy would do a little less than the dissenters. Well, Kennedy did note that there was evidence in the complaint. He did. That was important. Uncontested evidence. Yes, Kennedy did make note of that, the information in the complaints. Why aren't you relying on the part of Justice Kennedy's opinion that says that he, at least, would look behind the consular officer's reason only if the plaintiff provides, and I'm quoting him again, an affirmative showing of bad faith on the part of the consular officer? Yes. And I take it that this complaint does not attempt to show that. That's correct. It does not show bad faith in any way. All we know about the decision was that Mr. Ulloa showed up for two interviews, and we know that there's evidence of the indictment in the record. No, you're distinguishing, I think probably correctly enough, between sloppiness and bad faith. And that seems to be the line Justice Kennedy is trying to draw. Your Honor, I would certainly not argue that this decision was in any way sloppy. We don't know what this decision was based on. No, I said it was. I'm not putting those words in your mouth, but I said it might have been. Might have been, might not have been. There's a percentage of error in all governmental decisions, including decisions of this Court. And that's the point of the Facially Legitimate and Bonafide Standard. The point of the standard is not to allow courts to go behind and look to whether the decisions made were correct. All courts are allowed to do when there is a constitutional interest at issue, as there is alleged to be here. Do you see why we're troubled that the only basis is this indictment, which was dismissed? Even if this indictment was not part of the record, a citation to a valid statutory ground is enough under Dinn and Mandel. And if you're going to look at the indictment. We understand that that's your position. I think we've discussed it enough, and your time is now up. Thank you, Your Honor. We appreciate your argument. How much time do you have? Two minutes, Mr. Roth. Thank you, Your Honor, so much. In terms of discretion, the consular officer actually doesn't have discretion in this regard. If my client was inadmissible as being a former drug trafficker, they have no discretion to issue the visa. If he wasn't inadmissible, they have no discretion to deny on that ground. And the consular officer also has no discretion not to decide. A decision has to be made yes or no. We don't think that discretion or 1252A2B, which applies outside removal procedure, we don't think any of that is applicable. The board's case law says that where you're talking about a perpetual ground of inadmissibility, that a close examination is required. We think that that didn't happen here. We think that the failure to do what the agency's own procedure has called for it to do, it may not be a bad faith in the sense of intentionally separating an innocent family, but it is bad faith in that it's not faithfully executing the consular officer's duty under the law. My clients are forced to attend these interviews without a lawyer. The lawyers are not allowed in. Once the government takes on that sort of role, it makes sense that whatever procedural protections the consulate itself sets up should be adhered to and it makes particular sense here that we should want a little more corroboration because the charges were dismissed. I happen to have spoken with the prosecutor. This is, again, something I'd like to allege on remand. They haven't. I'm prepared to allege that they haven't. Whatever close investigation was required by board case law, how would that happen without even asking the prosecutor why were the charges dropped? He's still employed in the Northern District of Indiana. Now, I would add one further fact, which is that the rate of recidivism for drug offenders, my client has had a clean record before and since. It may not be a huge, overwhelming amount of evidence, but it's something significant. And in that sense, it's not dissimilar from the Garces decision out of the 11th Circuit, which involved another reason to believe where the crime had happened 23 years earlier. So on the merits, we would urge that the reasons that the counselor gave were wrong and that it's not beyond the power of the federal courts to correct them. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.